**SF HOTEL COMPANY, L.P.,**
**d/b/a Summerfield Hotel**
**Corporation, Plaintiff,**

v.

**ENERGY INVESTMENTS, INC., a Flori-**
**da Corporation; Bengt Horenberg; Sier-**
**ra Beach Hotel, Inc., a Florida Corpora-**
**tion; Claese Johansen; Inge Pettersson;**
**and Gene Tracy, Defendant.**

**No. 97–1306–JTM.**

United States District Court,
D. Kansas.

Nov. 19, 1997.

Carol A. Beier, Foulston & Siefkin L.L.P., Wichita, KS, Paul N. Tauger, Donald A.

Kaul, Dorsey & Whitney LLP, Costa Mesa, CA, for Plaintiff.

John T. Steere, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for Defendants.

*MEMORANDUM AND ORDER*

MARTEN, District Judge.

This declaratory judgment action involving the right to use of the "Sierra Suites" mark is currently before the court on defendants Energy Investments, Inc., Inge Pettersson and Bengt Horenberg's (referred to herein as Sierra Suites) Motion to Dismiss. On August 28, 1997, the court denied the motion of plaintiff SF Hotel Company for an injunction preventing defendant Energy Investments from proceeding with a separate action relating to the same subject matter in Florida. By the same order, the court granted defendant Bengt Horenberg's Motion to set aside a default judgment that had been entered against him. Notwithstanding the suggestion by the plaintiff in subsequent pleadings that the court has fundamentally misunderstood the nature of the present action (Pltf. Opposition, at 1), the court's prior order appropriately resolved plaintiff's motion for injunctive relief. The court has also reviewed carefully the materials submitted by the parties relating to the motion to dismiss and is ready to rule thereon.

Plaintiff SF Hotel Company operates 23 "Summerfield Suites" hotels in California, Florida, Georgia, Illinois, Missouri, New Jersey, North Carolina, Pennsylvania, Texas, and Virginia. The plaintiff has undertaken to construct additional hotels under the mark "Sierra Suites" in Orlando, Florida and Atlanta, Georgia.

Defendant has operated an all-suites hotel under the mark "Sierra Suites" in Dayton Beach, Florida since 1991.

On July 8, 1997, counsel for defendant wrote to the plaintiff's President demanding plaintiff cease and desist from using the "Sierra Suites" name. The letter stated that defendant would take appropriate action if it had not received satisfactory assurance by July 15.

On July 15, John R. Morris, the Senior Vice–President and General Counsel of SF Hotels, faxed a letter to the defendant stating that it needed an extension until July 21 to respond to the cease and desist letter. However, on the same day this letter was faxed, SF Hotels instituted the present declaratory judgment action. Shortly thereafter, the defendant instituted an infringement action against SF Hotels in the United States District Court for the Middle District of Florida.

The defendants do not own any property in Kansas and have not transacted any business in Kansas. Sierra Suites has not solicited business in Kansas or entered into any contracts to be performed in Kansas.

### Conclusions of Law

In their Motion to Dismiss, the defendants argue (1) there is no general or specific jurisdiction over them in Kansas, (2) even assuming jurisdiction were otherwise appropriate, the court should exercise its discretion under the Declaratory Judgment Act to decline jurisdiction in light of the circumstances present in the case, and (3) the plaintiff SF Hotels has failed to perfect service on the individual defendants Bengt Horenberg and Inge Pettersson. The court must agree with defendants as to these additional points. The court particularly finds, in light of all circumstances present in the case, that it is appropriate to decline to accept discretionary jurisdiction to hear this action. However, the court also believes that the matter should in any event be dismissed since Kansas is an inappropriate forum for the litigation.

To support an exercise for personal jurisdiction in Kansas, the plaintiff must show the defendant's conduct falls within the scope of the long-arm statute and that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1419 (10th Cir.1988); *Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F.Supp. 1443 (D.Kan.1986).

A plaintiff may demonstrate a defendant has had sufficient minimum contacts with the forum state in one of two ways. Specific jurisdiction exists when the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, and the claims against it arise out of those contacts. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996). General jurisdiction lies when the defendant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state. *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir.1996).

The plaintiff SF Hotels argues alternatively that jurisdiction is appropriate either as specific jurisdiction or general jurisdiction under the Kansas long-arm statute, K.S.A. 60–308(b)(1), (2), and (7). The court finds plaintiff's specific jurisdiction argument must be rejected in light of the Tenth Circuit's decision in *Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir.1995). In that case the court held that the mere fact of injury in the forum state due to allegedly tortious activities will not confer specific jurisdiction.

■■■ The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process. *Federated Rural Elec. Ins. v. Kootenai Elec.*, 17 F.3d 1302, 1305 (10th Cir.1994). However, the court finds under the facts of the case that SF Hotels' general jurisdiction argument must be rejected as well. SF Hotels fails to demonstrate either that the defendant's conduct falls within the scope of the long-arm statute, or that an exercise of jurisdiction under the statute would be consistent with due process.

In addition to the Sierra Suites' web site, which is discussed below, SF Hotels has identified a number of other facts which it alleges supports an exercise of jurisdiction over defendants in Kansas. First, it argues that defendant has transacted business in Kansas, an argument based upon one Kansas resident having stayed at the Sierra Suites hotel. There is no evidence as to what drew this single individual to stay in the hotel.[1]

---

1. Plaintiff also stresses contentions advanced in the Florida litigation that Sierra Suites has estab-

Moreover, the court finds this single contact is simply too minimal to alone support an exercise of jurisdiction over defendant.

SF Hotels also argues in its response brief that "the *Daytona Beach Visitor's Guide* is specifically distributed to Kansas residents." To the extent that the argument implies intentional and routine solicitation and targeting of Kansas residents by either Sierra Suites or the Daytona Beach Visitors Bureau, it misstates the evidence. The affidavit of Janet Zinn of the Visitors Bureau, which SF Hotels has attached to its response, instead merely indicates that the *Guide* is sent to "anyone who requests it," and that Ms. Zinn has further checked her records and found that the *Guide* had "been sent to Kansas residents in Kansas in response to their requests."

There is no evidence defendant Sierra Suites targeted Kansas residents. Rather, the only evidence before the court is that the defendant placed an advertisement in a local tourist brochure. The brochure is delivered to Kansas residents by the local tourist board, but only when those residents take active steps to acquire the additional information. The *Daytona Beach Visitor's Guide* constitutes a general, national advertisement, and supplies no additional basis for imposing personal jurisdiction in Kansas.

This leaves the Sierra Suites web site. The "Internet" is a general term for the modern development of communications among the nationwide and indeed worldwide network of computers. "The Internet is not a physical or tangible entity, but rather a giant network which interconnects innumerable smaller groups of linked computer networks. It is thus a network of networks." *ACLU v. Reno*, 929 F.Supp. 824, 830 (E.D.Pa.1996). As with other forms of communication, communications over the Internet may vary extensively in terms of purpose, depth, and responsiveness. The court in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997) recently summarized the nature of Internet communi-

cations in relation to traditional standards governing personal jurisdiction.

> The Internet makes it possible to conduct business throughout the world entirely from a desktop. With this global revolution looming on the horizon, the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages. The cases are scant. Nevertheless, our review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo. 1996).

952 F.Supp. 1119, 1123–24 (footnote omitted).

Applying these general principles to the present case, jurisdiction should be declined.

---

lished nationwide recognition of its brand. This sort of general allegation is simply insufficient to establish contacts between defendants *and the State of Kansas*. As noted above, the only evi-

dence in the case reflecting such a connection *is* indication that one Kansas resident has stayed in the defendant's Florida hotel.

The only evidence presented here is that defendant has maintained a passive web site which provides general information about its hotel. There is no provision for direct communications between the defendant and the person accessing the web site.

Generally, the cases cited by SF Hotels in support of exercising jurisdiction all involve a level of Internet activity far beyond what is presented here. These cases either involve active communications across the Internet, or trademark infringement actions directly connected with the Internet activity of the defendant. *See, e.g., Heroes, Inc. v. Heroes Foundation,* 958 F.Supp. 1 (D.D.C.1996); *Inset Systems, Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161 (D.Conn.1996); *Zippo Mfg.,* 952 F.Supp. at 1119 (defendant sent targeted solicitations via the Internet to forum residents); *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996).

The results in these cases are similar to other, more recent decisions which were not cited by plaintiff but which also involve more than passive Internet advertising. *See American Network Inc. v. Access America/Connect Atlanta, Inc.,* 975 F.Supp. 494 (S.D.N.Y.1997) (court found "tangible manifestations that defendant was attempting to reach a New York market" through its Internet activity and had signed up subscribers in the New York market); *Digital Equipment Corp. v. AltaVista Technology, Inc.,* 960 F.Supp. 456, 463 (D.Mass.1997) (noting case presented "no issue of parties being haled into the courts of a given jurisdiction solely by virtue of a Web-site, without meaningful notice that such an outcome was likely"); *Resuscitation Technologies, Inc. v. Continental Health Care Corp.,* Case No. 96–1457–C–M/S, 1997 WL 148567, at *5 (S.D.Ind. March 24, 1997) (initial Internet solicitation resulted in reply and extensive ongoing communications through e-mail).

On the other hand, there are a number of recent decisions with facts very similar to those presented here. These cases would support a finding that jurisdiction is inappropriate in Kansas. In *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295, 301 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 25 (2nd Cir.1997), the court concluded that the defendant, the operator of a Missouri nightclub, could not be haled into court in New York in a trademark infringement action, merely because the defendant had created a web site:

> Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state.... There are no allegations that King actively sought to encourage New Yorkers to access his site, or that he conducted any business—let alone a continuous and systematic part of its business—in New York. There is in fact no suggestion that King has any presence of any kind in New York other than the Web site that can be accessed worldwide.

937 F.Supp. at 301 (citations omitted).

The court reached a similar conclusion in *Hearst Corp. v. Goldberger,* Case No. 96–Civ.–3620, 1997 WL 97097 (S.D.N.Y. Feb.26, 1997). In that case Hearst Corporation, the owner of Esquire Magazine, sued a provider of legal information services which had created an Internet domain name and web site entitled "ESQWIRE.COM." After reviewing the background of the Internet and the evolving standards of personal jurisdiction, the court concluded jurisdiction in New York did not exist over the defendant, who operated in New Jersey and Philadelphia. The defendant's web site, the court found, "is most analogous to an advertisement in a national magazine" which was "not targeted at the residents of New York or any other particular state." 1997 WL 97097 at *10.

The United States District Court for the Western District of Arkansas recently reached a similar conclusion in *Smith v. Hobby Lobby Stores, Inc.,* 968 F.Supp. 1356 (W.D.Ark.1997). The court stated that the defendant's Internet activity was insufficient to impose personal jurisdiction over defendant in Arkansas.

> In this case, at the most, Boto's advertisement in a trade publication appears on the Internet. Boto did not contract to sell any goods or services to any citizens of Arkansas over the Internet site. Thus, the court finds that the alleged Internet posting by or in behalf of Boto is simply an insufficient "contact" with Arkansas to support

haling this Hong Kong business into the courts of Arkansas.... The courts have not abandoned the notion that jurisdiction must be premised on activity deliberately directed toward the forum state or on proof of purposeful availment of the privilege of doing business in the forum state.

968 F.Supp. at 1365.

In September, the District of New Jersey decided a case which perhaps is the one most closely on point. *Weber v. Jolly Hotels,* 977 F.Supp. 327 (D.N.J.1997). The plaintiff, a New Jersey resident, was allegedly injured when she fell at a hotel in Sicily, and brought suit against the hotel in New Jersey. The plaintiff argued in part that jurisdiction was appropriate because the hotel had advertised on the Internet. The court rejected the argument, finding the defendant "placed information about its hotels on the Internet as an advertisement, not as a means of conducting business." 977 F.Supp. at 333. Comparing the defendant's action to a nationwide magazine advertisement, the court ultimately concluded:

exercising jurisdiction over a defendant who merely advertises its services or product on the Internet would violate the Due Process Clause of the Fourteenth Amendment. Exercising jurisdiction in such a case would be unjust and would disrespect the principles established by *International Shoe* [*v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] and its progeny.

*Id.* at 333.

This court agrees. Given the extremely tenuous connections between defendants and the State of Kansas, any exercise of jurisdiction over defendants in this forum is clearly inappropriate on any basis.

IT IS ACCORDINGLY ORDERED this 19th day of November, 1997, that defendants' Motion to Dismiss (Dkt. No. 12) is hereby granted.